No. 90-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

MAY 23 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

S.M., J.A.M., M.M., J.K.M., and J.N.M., all individuals,

    Plaintiffs and Appellants,

-vs-

R.B., an individual, and MISSOULA SCHOOL DISTRICT No. 1, a
political subdivision of the State of Montana,

    Defendants and Respondents.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James P. O'Brien and Randolph J. Stevens; O'Brien
Law Offices, Missoula, Montana.

    For Respondent:

        Larry Jones; Garlington, Lohn & Robinson, Missoula,
Montana.

---

Submitted on briefs: May 21, 1991

Decided: May 23, 1991

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The complaint alleges that R.B., an educational aide for the Missoula School District, sexually assaulted four-year-old plaintiff S.M., who was enrolled in the Missoula School District special education program for the developmentally disabled. The defendants include the School District and the School District personnel involved in the special education program. The District Court for the Fourth Judicial District, Missoula County, granted defendants' motion to dismiss the Amended Complaint of the plaintiffs on the grounds of immunity, and subsequently granted the motion to dismiss the Second Amended Complaint on the same grounds. Plaintiffs appeal. We affirm in part and reverse in part.

The issues are:

1.   Have the Montana statutes and case law interpretations resulted in an ambiguity requiring a reversal of the District Court holding that the defendants are immune under § 2-9-111, MCA?

2.   Does the purchase of insurance waive immunity?

3.   Did the District Court improperly fail to rule on plaintiffs' claims under 42 U.S.C. § 1983?

4.   Is § 2-9-111, MCA, unconstitutional?

The facts as alleged in the Amended Complaint and the Second Amended Complaint are as follows:

Plaintiffs included S.M., her two parents, and the other two minor children in her family. S.M. was a four-year-old suffering developmental disabilities and was enrolled in the School

2

District's special education program when the acts occurred. Plaintiffs allege that the special education program established a special relationship between S.M., her family, and the School District.

R.B. was an educational aide for the School District, who helped in the education and training of developmentally disabled children attending the School District's program.

The School District maintained a policy of liability insurance insuring against liabilities arising from its negligence. Plaintiffs contend the procurement of such insurance constitutes a waiver of sovereign immunity to the extent of the insurance coverage.

Plaintiffs alleged that on or about April 16, 1987, R.B. sexually assaulted S.M. and committed sodomy and attempted rape. S.M. received vaginal lacerations of such severity that reconstructive surgery will be required at adulthood. She suffers continual nightmares, and has become fearful of school.

Plaintiffs alleged that the School District and its employees were negligent in the hiring, controlling and supervising of R.B. as an educational aide. Plaintiffs maintain the School District knew or should have known that R.B. had "a predatory predisposition toward young developmentally disabled children by virtue of prior reports" that warned the School District of R.B.'s "antisocial and dangerous behavior".

Plaintiffs alleged seven different causes of action with various theories of liability which will be discussed where

3

appropriate. In substance the defendants assert that plaintiffs' claims are barred by the following defenses:

doctrine of sovereign immunity;
doctrine of respondeat superior;
doctrine of exhaustion of remedies;
failure to seek administrative review;
lack of jurisdiction;
claims for monetary damages barred by § 2-9-108, MCA;
claims for punitive damages barred by § 27-1-221, MCA; and
claims barred by 42 U.S.C. § 1983 (1981).

Following the failure of R.B. to appear, plaintiffs moved for default judgment which was entered against him on September 8, 1989.

The School District filed a Rule 12, M.R.Civ.P., motion to dismiss the plaintiffs' complaint. On January 25, 1990, the District Court granted the motion to dismiss the plaintiffs' Amended Complaint on the grounds of immunity. Subsequently, the District Court also granted defendants' motion to dismiss plaintiffs' Second Amended Complaint on the same grounds. From that order, plaintiffs appeal.

I

Have the Montana statutes and case law interpretations resulted in an ambiguity requiring a reversal of the District Court holding that the defendants are immune under § 2-9-111, MCA?

Plaintiffs argue there is a statutory ambiguity which is apparent upon a comparison of § 2-9-111, MCA, the immunity section, and § 20-3-331, MCA, which authorizes the trustees of a school district to purchase insurance coverage against liability for death, injury or disability of any person. Essentially plaintiffs

4

argue there is no purpose in authorizing a school district to purchase liability insurance if there is immunity. This contention is cared for in Part II of this opinion in which we conclude that the purchase of liability insurance in this case does constitute a waiver of immunity.

Plaintiffs contend there is ambiguity as a result of the various cases previously decided in Montana. In particular, plaintiffs rely upon B.M. v. State (1982), 200 Mont. 58, 649 P.2d 425. Plaintiffs argue that in B.M. this Court found there was no governmental immunity for negligence committed under a special education program and that such theory should be applied in the present case. In considering the cases, it is necessary that we first set forth the provisions of § 2-9-111, MCA:

> **Immunity from suit for legislative acts and omissions.** (1) As used in this section:
> (a) the term "governmental entity" includes the state, counties, municipalities, and school districts;
> (b) the term "legislative body" includes the legislature vested with legislative power by Article V of The Constitution of the State of Montana and any local governmental entity given legislative powers by statute, including school boards.
> (2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.
> (3) A member, officer, or agent of a legislative body is immune for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.
> (4) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

Plaintiffs have not discussed the cases subsequent to B.M. which must be considered. In State ex rel. Eccleston v. Montana

Third Judicial Dist. Ct. (1989), 240 Mont. 44, 53, 783 P.2d 363, 369, the Court set forth the contentions of the plaintiffs in B.M. and stated:

> In B.M., the plaintiffs sued the State for negligence in placing a six-year old child in a special education program for educable mentally retarded children. The State was granted summary judgment based on immunity under § 2-9-111, MCA. We reversed on the grounds that the legislature had not enacted legislation to limit the liability of school boards in the administration of special education programs. We held that in the absence of a clear statutory declaration granting immunity it is this Court's duty to permit rather than to deny an action for negligence. B.M., 649 P.2d at 427.

However, Eccleston pointed out that § 2-9-111, MCA, was not discussed in B.M. In concluding that under the decisions, the plain language of the statute constitutes a clear statutory declaration granting immunity, the Court said in Eccleston:

> The plain meaning of the actual language used in § 2-9-111, MCA, was not discussed in our decision in B.M. v. State. We have decided several other immunity cases since our 1982 decision in B.M. In the process, we have arrived at the current construction of § 2-9-111, MCA, on a case-by-case basis. B.M.'s rule of strict construction still holds true. However it is now clear, particularly after our decisions in Bieber and Peterson, that the plain language of the statute constitutes a clear statutory declaration granting immunity to the relators in this case.

Eccleston, 783 P.2d at 369. The Court then analyzed further and pointed out that the statute granted immunity to both the school district and its individual employees, and stated:

> In this regard, we are not asserting in this opinion that the statute is unequivocally clear at first glance. Indeed, several interpretations of § 2-9-111, MCA, have been argued in the line of cases that have come before us since the statute's adoption. However, it is this line of cases, particularly our recent decisions in Bieber and Peterson that has given a specific and

6

reasonable interpretation to the statute based on the plain meaning of the actual language used. Moreover, this interpretation of § 2-9-111, MCA, leads us to but one conclusion: the statute grants immunity to both the school district and its individual employees in this case.

Id. at 369. It is clear that Eccleston disposes of the argument made by the plaintiff. This interpretation was approved in Hayworth v. School Dist. No. 19 (1990), 243 Mont. 503, 795 P.2d 470, in which this Court affirmed the Eccleston rationale and its interpretation of B.M., and reached the conclusion that the claims of the plaintiffs in Hayworth were barred by the immunity found in § 2-9-111, MCA.

In a similar manner, in Crowell v. School Dist. No. 7 (Mont. 1991), 805 P.2d 522, 48 St.Rep. 81, this Court affirmed the rationale of Eccleston, holding that the school district in Crowell was immune from suit for an act or omission of its agent and that the physical education teacher was the agent of the school district. Further the Court concluded that the claim for damages arose from the lawful discharge by the teacher of an official duty associated with actions of the school district and its legislative body. The Court held that the physical education teacher was immune under § 2-9-111, MCA.

Montana now has a number of consistent interpretations of § 2-9-111, MCA, which are controlling on the present issue. We conclude that there is no basis for a reversal of the holding of the District Court that the defendants were immune under the provisions of § 2-9-111, MCA.

7

## II

Does the purchase of insurance waive immunity?

Plaintiffs maintain that even if the School District and its employees are immune, such immunity is waived to the extent of existing liability insurance coverage. The School District argues that the grant of immunity is a public right which cannot be waived.

In Crowell this Court concluded that the purchase of insurance may constitute a waiver of immunity by a school district. In Crowell, the plaintiff alleged that the negligence of the physical education teacher and the school district caused her injuries. Summary judgment was granted to the defendants based on immunity. On appeal plaintiff contended that any such immunity was waived by the school district's purchase of an insurance policy specifically covering teachers and physical training instructors. After an extensive review of Montana legislative history and the case law of other jurisdictions, this Court concluded:

> We emphasize that Montana's statutory provisions are unique. We conclude that the Montana Legislature has reached the following conclusion: while a school district is granted immunity of various types, a school district still is granted authority to purchase insurance which may have the effect of waiver of immunity to the extent of the insurance proceeds. We do not find it necessary to imply a waiver, as the intention of the Legislature is clear. That intention is reemphasized by its authorization of tax levies sufficient to pay for insurance premiums. That intention is consistent with the legislative theory that a claim against a school district should be paid in a manner similar to payment required of a private party. We conclude that the Legislature has declared its intent to allow a school district to waive immunity to the extent of the insurance proceeds.

8

<u>Crowell</u>, 805 P.2d at 533. This Court then made the following holding:

> Balancing all applicable factors, we hold that the purchase by the School District of liability insurance waives its immunity to the extent of the coverage granted by the pertinent insurance policy.

<u>Crowell</u>, 805 P.2d at 534.

In accordance with the holding in <u>Crowell</u>, we hold that the purchase by the School District of liability insurance waives its immunity to the extent of the coverage granted by the pertinent insurance policies. We remand to the District Court for further proceedings consistent with this holding.

## III

Did the District Court improperly fail to rule on plaintiffs' claims under 42 U.S.C. § 1983?

By its Opinion and Order dated January 25, 1990, the District Court granted defendants' motion to dismiss the Amended Complaint with prejudice on the grounds that the named defendants were immune from suit for damages under § 2-9-111, MCA, and cases interpreting that section. The District Court did not specifically rule on the § 1983 claims. Plaintiffs contend that the District Court abused its discretion by dismissing those claims. The defendants urge that the doctrine of implied findings should be used to reach the conclusion that the District Court did rule on the federal claims.

In a consideration of the § 1983 claims of the plaintiffs, the District Court was required to analyze the complaint, the facts presented to it, and to apply the law in reaching a decision as to

whether or not § 1983 claims were barred. The court did not make such an analysis. Apparently it assumed that the § 1983 claims would be barred under § 2-9-111, MCA. We note that Howlett v. Rose (1990), 110 S.Ct. 2430, is a case in which the United States Supreme Court concluded that a state immunity defense was not available in a § 1983 action brought in a state court, when such a defense would not be available if the action were brought in a federal court. Howlett precludes any implication on our part that the District Court properly dismissed § 1983 claims.

We therefore remand this issue for consideration and determination by the District Court.

IV

Is § 2-9-111, MCA, unconstitutional?

In their pleadings the plaintiffs briefly alleged deprivation of constitutional rights. In a similar manner, plaintiffs' briefs contain only a limited argument on theories of unconstitutionality. It appears that the plaintiffs added constitutional arguments in the hope that if previous contentions failed, there might be some basis for a reversal on theories of unconstitutionality. In view of our remand to the District Court on the issues of waiver of immunity by insurance and also 42 U.S.C. § 1983, it may be that the plaintiffs will choose no longer to urge the constitutional issues. If they conclude that they wish to present such issues, then both sides may present their theories and briefs to the District Court and request an appropriate determination by that court. We note that the District Court did not rule on this issue. We conclude

10

it is not appropriate in this case to consider the issue of unconstitutionality of § 2-9-111, MCA.

We reverse the orders of dismissal of the District Court and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the result of the majority opinion. Based upon this Court's decision in Crowell v. School Dist. No. 7 of Gallatin County, 805 P.2d 522, 48 St.Rep. 81 (Mont. 1991), I agree that this case should be remanded to the District Court for further proceedings consistent with that opinion. However, I disagree with the reasoning of the Crowell decision. It is clear to me that the legislature did not authorize the waiver of immunity when it authorized local governments to purchase insurance. It authorized local governments to purchase insurance because it never did create the kind of local governmental immunity that has been found to exist by this Court.

I also concur in that part of the majority's opinion which remands this case to the District Court for proper consideration of the plaintiffs' claims under 42 U.S.C. § 1983.

I dissent from that part of the majority's opinion which holds that § 2-9-111, MCA, clearly and unambiguously provides immunity to the Missoula School District and its employees for the acts complained of by the plaintiffs.

To understand just how far we have come with this Court's unique brand of judicial activism, it is necessary to put this holding in the proper perspective. The defendant, R.B., is accused of raping and sodomizing a four-year-old special education student, and in the process, causing serious physical and emotional injury. In order to immunize the school district and all of its employees,

12

this Court had to conclude that the depraved conduct which is complained of was "action by the legislative body." I am confident that the members of the Board for the Missoula School District will take no satisfaction in this appalling conclusion.

Section 2-9-111, MCA, is a poorly worded statute which provides different types of immunity to different defendants. Subsection (2) is relatively straightforward and provides that "[a] governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof." (Emphasis added.)

However, subsection (3), which pertains to governmental employees in their individual capacities, sets forth a completely different description of when immunity applies. It states:

> A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

Section 2-9-111(3), MCA.

In this case, plaintiffs sued both the school district and several of its employees.

It is obvious from any reasonable interpretation of these two sections that liability of individual governmental employees is granted on a much more limited basis than liability for the governmental entity itself. If not, it would have been a simple matter for the legislature to provide in subsection (2) that "a governmental entity and its employees are immune from suit from an act or omission of its legislative body, or a member, officer,

13

or agent thereof." (Emphasis added.) The legislature chose not to do that. Therefore, this Court should not do so.

In his concurring opinion to <u>Crowell</u>, Chief Justice J. A. Turnage correctly points out that:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. This is the rule of law governing statutory construction, and it is an appropriate and proper rule. There is no place for individual preference or desire to become the rule of law when the Court interprets statutory language.

I agree with Chief Justice Turnage's conclusion regarding the proper role of this Court. However, I disagree that this Court has adhered to that rule of statutory construction when interpreting § 2-9-111, MCA. If it did, it could certainly not have concluded that the sodomization and rape of a four-year-old special education student by a teacher's aide was "the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body."

The reason we are at the point we have reached with today's decision is that this Court has ignored the statutory admonishment found in § 1-2-101, MCA, and substituted its collective personal preference for a literal application of the statutory language found in § 2-9-111(3), MCA. The misapplication of that statute will result in countless hardships to innocent victims throughout the State of Montana. I prefer not to be part of blind adherence to precedent which is both legally incorrect and morally indefensible.

14

Furthermore, I dissent from that part of the majority decision which refuses to address the constitutionality of § 2-9-111, MCA, as it has been applied by this Court.

The principal reason for which this Court exists is to enforce the Constitution of the State of Montana. When the legislature, through its statutes (as they are written or as this Court interprets them), violates the Constitution, this Court owes Montana's citizens its judgment to that effect.

Article II, § 4, of the Montana Constitution provides in part that "no person shall be denied the equal protection of the laws." That provision of our state constitution is similar to rights provided for in the 14th Amendment of the United States Constitution. The equal protection clauses of both constitutions go to the very heart of the reason for which this Court exists. They guarantee that all Montana citizens shall be treated fairly.

There is no greater example in the recent history of this Court of unfair treatment of Montana citizens than in this Court's recent decisions on the issue of local governmental liability. Those decisions have been inconsistent and irrational. And yet, they deny Montana citizens the most fundamental rights that any citizen in a free country possesses. They deny Montanans the right to use their courts to seek redress from a government which injures them through irresponsible, negligent, or even intentional and unlawful conduct.

In Meech v. Hillhaven, 238 Mont. 21, 776 P.2d 488 (1989), this Court held that there is no fundamental right in Montana to full

15

legal redress for injuries or damages caused by the unlawful or negligent act of another. Therefore, according to that decision, classifications which give different rights to different classes of tort victims need not pass the strict scrutiny test and need not be justified by a compelling governmental interest. The state need only establish that the disparate treatment of similar claims is rationally related to a state interest. While I disagree with this Court's decision in Meech, I am satisfied that the patchwork of arbitrary classifications created by this Court's decisions on local governmental liability cannot meet the most liberal rational basis analysis.

According to this Court's decisions, if a person is seriously injured due to the negligent maintenance and signing of roads in Fallon County, that person has no recourse against local government. Miller v. Fallon County, 240 Mont. 241, 783 P.2d 419 (1989). However, if that same person sustains the same injuries under the exact same circumstances in the City of Billings, he may be fully compensated. Irion v. Peterson, 807 P.2d 714, 48 St.Rep. 258 (Mont. 1991). What is the rational basis for such a distinction?

Under this Court's application of the law, if a local citizen is paralyzed because a county road crew digs a ten foot ditch across the road and leaves it unmarked at night, that victim is without any remedy. Miller. However, if a member of the same road crew gets into a county truck, runs a red light and strikes another local citizen, that citizen can be fully compensated, no matter how

minor his or her injury. § 2-9-111(4), MCA. What is the rational basis for such a distinction?

Under this Court's series of decisions, if a local citizen is injured because he or she slips on the steps at the University of Montana, that person may be fully compensated. Mitchell v. University of Montana, 240 Mont. 261, 783 P.2d 1337 (1989). However, if that same person is injured because he slips and falls on the steps of the local junior high school, he is without a remedy. Eccleston v. District Court, 240 Mont. 44, 783 P.2d 363 (1989). What is the rational basis for such a distinction?

Under this Court's decisions, if a Montana citizen is injured due to the negligence or illegal conduct of a member of the park board which is appointed by the county commission in Yellowstone County, that person may be fully compensated. Koch v. Yellowstone County, 243 Mont. 447, 795 P.2d 454 (1990). However, if that same person is injured due to the negligence of the road foreman hired by the commissioners for Yellowstone County, that person is without a remedy. Miller.

Under this Court's recent decisions, if a citizen of Montana is injured due to the negligence of an employee of the Town of Whitefish, and if that town is responsible enough to purchase liability insurance for the protection of its citizens, then that injured victim can be fully compensated for his injuries. Crowell. However, if that person's spouse is injured by the same conduct and under the same circumstances, by public officials in Kalispell, and if that town is irresponsible enough to go without liability

17

insurance, then that person is entitled to no compensation, no matter how disabling or catastrophic his injuries. What is the rational basis for any of these distinctions?

If this Court can conceive for a rational basis for the arbitrary classifications of tort victims that have been established by its series of decisions set forth above, then it has rendered the important constitutional guarantee of "equal protection" meaningless, and no one in Montana is protected from the arbitrary whims that create discrimination among its citizens.

If the equal protection clause is so meaningless, then the legislature can decide that doctors can be sued, but that lawyers are immune; that plumbers can be sued, but that carpenters are immune; and that women can be sued, but that men are immune. The ultimate test will be who has the most influential lobby at the legislature.

To avoid such situations is exactly why we have a constitution and a judicial branch of government. However, the majority has abdicated its responsibility to address this critical issue based on speculation that plaintiffs were not that serious about it in the first place.

On appeal, the plaintiffs have clearly raised the fact that they, as victims of abuse in a public school, are being treated differently than if they had suffered the same abuse in a private school. There is no question about the fact that if a four-year-old preschool student was sodomized and raped in a private school, she and her family would be entitled to reasonable compensation for

18

the terrible physical and emotional injuries that she had sustained. On appeal, the plaintiffs have asked this Court to justify that arbitrary class distinction. This Court obviously cannot do so, and so, has, in effect, told the plaintiffs, "don't bother us with constitutional technicalities."

It is ironic that during the same year that Montana became the 48th state to honor slain civil rights symbol, Martin Luther King, Jr., this Court refuses to recognize the civil rights of its private citizens when in conflict with local bureaucrats and their agents.

I would accept this Court's obligation to decide the constitutionality of § 2-9-111, MCA, as it has been applied, and I would find that, as it has been applied, it violates the equal protection clause of the Montana and federal Constitutions.

For these reasons I dissent from the majority opinion.

_____
                              Justice

I concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____
                              Justice

Justice Karla M. Gray, concurring in part and dissenting in part.

I agree with the result of the majority opinion in remanding to the District Court for further proceedings in light of the availability of insurance coverage, although I disagree with its rationale in Crowell v. School Dist. No. 7 (Mont. 1991), 805 P.2d 522, 48 St.Rep. 81, that the availability of the coverage is predicated upon a waiver of immunity. I also agree with the majority's remand for consideration and determination of the § 1983 claims. I must, however, respectfully dissent from the Court's interpretation of § 2-9-111, MCA, as it applies to this case and from the Court's refusal to address the constitutional issue before it.

With regard to the immunity issue, I am not blind to the importance of precedent. However, I cannot assent to the application of this Court's precedents in the area of so-called legislative immunity as it relates to this case. For the Court to expand its previous holdings which were, in my view, legally incorrect to begin with, to provide immunity to an employee who (if the allegations herein are taken as true) rapes and sodomizes a four-year-old special education student on the basis that the employee was engaged in the "lawful discharge of an official duty associated with action by the legislative body" is beyond the bounds of reason, legal or otherwise.

Finally, it is my view that the Court has an obligation to address the equal protection issue which is before it. The

20

classifications which have resulted from the Court's immunity rulings are troubling, at best, and may be constitutionally infirm. I have not determined whether I believe those classifications can meet the rational basis test. I am, however, convinced that it is time for the Court as a whole to address the question. If it is the Court's view that additional briefing or argument is needed, the Court need only direct such a course of action. We should not careen further down the immunity path without determining whether we have been a party, through our interpretations of legislative enactments, to depriving the citizens of Montana of their constitutional rights.

Karla M. Gray
Justice