NO.    93-204

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993


S.M., J.A.M., M.M., J.K.M., and
J.N.M., all individuals,

    Plaintiffs and Appellants,


R.B., an individual, and MISSOULA,
SCHOOL DISTRICT NO. 1, a political
subdivision of the State of Montana,

    Defendants and Respondents.



FILED

NOV 16 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable John S. Henson, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           James P. O'Brien and Randolph J. Stevens, O'Brien
           Law Office, Missoula, Montana

       For Respondent:

           John 0. Mudd, Garlington, Lohn & Robinson, Missoula,
           Montana


                   Submitted on Briefs:    August 19, 1993

                           Decided:    November 16, 1993

Filed:

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs appeal the order of the District Court of the Fourth Judicial District, Missoula County, which granted summary judgment to Missoula School District No. 1 (School District) in an action which alleged that a four-year old plaintiff had been sexually assaulted by a teacher's aide.

Defendant R.B. did not appear and defend in this action. R.B.'s default was entered by the clerk of court. The School District initially asserted that the claims against it were barred by the defense of immunity. In the prior appeal of this cause, this Court held that the School District waived immunity to the extent of any liability insurance it had purchased. See S.M. v. R.B. (1991), 248 Mont. 322, 811 P.2d 1295.

We reverse in part and affirm the summary judgment in favor of Missoula School District No. 1.

The plaintiffs present the following issues for review:

1.    Did the District Court err when it granted defendant School District's motion for summary judgment?

2.    Where default was entered by the clerk of court against defendant R.B. for failure to appear, does the subsequent entry of summary judgment in favor of the School District require the inclusion of R.B. in the judgment of dismissal?

3.    Did the District Court abuse its discretion by not holding a separate evidentiary hearing on the admissability of certain hearsay evidence?

Plaintiffs alleged in their complaint that on or about April

2

16, 1987, defendant R.B. sexually assaulted plaintiff S.M., committing sodomy and attempted rape. R.B. was employed by defendant School District as a teacher's aide at Hawthorne School in Missoula, Montana. Plaintiff S.M. was four years old at the time and was enrolled in the School District's special education pre-school program for children with developmental disabilities. The remaining plaintiffs are S.M.'s parents and siblings.

Plaintiffs claim that S.M. was sexually assaulted while R.B. was under the supervision of the School District. Prior to the filing of this action, the Missoula County Sheriff's Department conducted a criminal investigation of allegations that R.B. had sexually assaulted S.M.; the Sheriff's Department did not charge R.B. with any crime as a result of its investigation.

The allegations against R.B. arose from an injury sustained by S.M. in April 1987. S.M.'s parents became concerned that she had been sexually assaulted when S.M.'s mother noticed a small cut in S.M.'s genital area while bathing her. Two weeks later, again while bathing, S.M.'s mother became alarmed when she noticed that the cut had reopened and also that there was what she termed a "blood blister" near S.M.'s vagina. S.M. suffers from Down's Syndrome and could not effectively communicate the cause of her injury to her parents or others.

S.M.'s mother took S.M. to a physician the following morning. The record submitted to this Court contains portions of deposition testimony from Dr. Kathleen Rogers, the pediatrician who examined S.M. Dr. Rogers concluded from the history given by S.M.'s mother

3

and her examination of S.M. that it was likely that S.M. had been sexually assaulted, although a sexual assault was not conclusively established. Dr. Rogers testified that injuries of the type that S.M. had suffered could result from a number of other factors not related to sexual abuse, including playing with straddle-type toys. S.M.'s mother told Dr. Rogers that S.M. did not play with straddle-type toys. S.M.'s mother also indicated that S.M. had exhibited fears relating to getting on the school bus after the injury as well as other changes in behavior around that time. She also testified to environmental changes in the home, such as S.M.'s refusal to have any adult present with her in the bathroom, including her parents, and the fact that S.M. had been "transitioned" from her crib to a single bed at about that time.

Hawthorne School, where S.M. attended school in the mornings, conducted two pre-school special education classes, one which S.M. attended. Each class had a teacher and at least two aides for six developmentally disabled children. At the time of the injury, R.B. was a teacher's aide in one of these classrooms; however, he was never an aide in S.M.'s classroom.

The special education program provided structured, segmented learning periods for the children, including "gym classes." Plaintiffs contend that R.B. sexually assaulted S.M. during one of the twenty-minute gym classes when he took her to the bathroom adjacent to the gym. Other testimony indicated that, because of their special needs, the children were never taken to rest rooms other than those provided in their own classrooms. Testimony was

4

also presented to demonstrate that R.B. would not have had anything to do with S.M. or any other child who was not a student in the classroom to which he was assigned.

The District Court granted summary judgment to the School District, stating that, although the evidence conflicted, it appeared more likely than not that S.M. was sexually assaulted. However, the court found no material evidence to indicate R.B. was the perpetrator of the assault. The court's judgment provides:

> Ordered! adjudged and decreed that the District shall have Judgment against the Plaintiffs, that the Plaintiffs shall . . . take nothing from their complaint and that complaint be dismissed, and that the District shall recover its costs of suit as provided by law.

Additional facts will be provided as necessary throughout this opinion.

I.

Did the District Court err when it granted defendant School District's motion for summary judgment?

In reviewing a district court's grant or denial of summary judgment, this Court applies the same standard as the district court. Krebs v. Ryan Oldsmobile (1992), 255 Mont. 291, 295, 843 P.2d 312, 314-15. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The burden is on the movant to show a complete absence of any genuine issues of fact "deemed material in light of the substantive principles that entitle that party to a judgment as a matter of law." Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637

5

P.2d 509, 511. 'When the movant has met the initial burden, the burden shifts to the party opposing summary judgment to demonstrate a genuine issue of material fact. Frigon v. Morrison-Maierle, Inc. (1988), 233 Mont. 113, 117, 760 P.2d 57, 60.

"On a motion for summary judgment the issues presented by the pleadings are not controlling." Brown v. Thornton (1967), 150 Mont. 150, 155, 432 P.2d 386, 389. Because issues of negligence involve questions of duty, breach of duty and proximate cause of injury, they are not ordinarily susceptible to summary judgment and are usually better resolved at trial. Hendrickson v. Pocha (1990), 245 Mont. 217, 219, 799 P.2d 1095, 1097. On the other hand, if the plaintiff has failed to establish evidence of a genuine issue of material fact remaining to be tried in a negligence action, summary judgment is properly granted to the defendant. Thelan v. City of Billings (1989), 238 Mont. 82, 86, 776 P.2d 520, 522. Unsupported speculative and conclusory statements on the part of the plaintiff as to what might have happened do not constitute issues of material fact. Nelson v. Montana Power Co. (1992), 256 Mont. 409, 412, 847 P.2d 284, 286. As our discussion below explains, our independent review of the record has not produced evidence of issues of material fact.

Initially, we note that there is no clear evidence to support the claim that S.M. was sexually assaulted. S.M. was injured in her genital area, but testimony from the pediatrician who examined her indicates that S.M. could have been injured by other means, both innocent and accidental. In reaching her conclusion that S.M.

6

was sexually abused, Dr. Rogers relied not only on physical manifestations of the injury, but also on the information given her by S.M.'s mother, who provided information about S.M.'s activities.

There has been exhaustive discovery in this action, including depositions of teachers, teacher's aides, School District administrative employees, and doctors. It is primarily the testimony of a clinical psychologist who evaluated and treated S.M that tips the scale toward the District Court's finding that more likely than not S.M. had sustained sexual abuse. The psychologist, Jacelyn Wedell-Monnig, wrote that "[S.M.'s] reported behaviors and statements to me leave no doubt in my mind that the events took place at Hawthorne."

S.M. attended the School District's pre-school program at Hawthorne School from 9:00 a.m. to 11:45 a.m. each weekday. S.M. and five other students were taught in a classroom headed by a supervising teacher and assisted by at least two classroom aides. R.B. worked in another classroom with six other students. Except for a twenty-minute period for gym class once per week, the aides had no access to students from the other classroom. The other classroom aides and teachers were present during the gym class as well. Testimony was presented which indicated that the children were "toileted" only by the aides assisting in their own classroom and that the special needs children in these two classrooms were always taken to the rest room adjacent to their own classroom for such purposes and not to the rest room at one end of the gym. The individual programs of the pre-school children at Hawthorne School

required that specific classroom aides attend to their needs.

S.M.'s mother testified that S.M.'s particular behavior indicated the abuse happened at Hawthorne School. For example, S.M. exhibited an aversion to getting on the bus which took her to Hawthorne School. Her mother further testified that S.M. wanted to avoid the bus and Hawthorne School and that she was afraid of things that reminded her of the school, such as red brick-walled places, "large gymnasium-type open places which reminded her of disinfectant odors or musty, earthy odors" and hallways with red or rust-colored lockers. S.M.'s mother testified that she also had nightmares and tried to act out what had happened to her by stuffing Kleenex, washrags and other things used as phallic symbols in her mouth.

Although S.M. demonstrated an aversion to her school and exhibited other behavioral changes, there is no evidence in the record that S.M. made any sort of identification of her abuser. The District Court viewed a video tape of S.M. being interviewed by her treating psychologist and stated:

> [T]he Court, after viewing the video tape of the child finds that the child was not competent to pinpoint her assailant or comprehend what was being asked of her. The child's verbal and cognitive skills do not appear on the video tape as well enough developed to persuade the Court that a knowing and conscious decision was made by the child identifying R.B. as the individual who hurt her. Throughout the video, the child is prompted to identify her alleged assailant, and the child is either nonresponsive or makes multiple "identifications."

We have viewed the video tape in the course of our review and affirm the District Court's finding that the video tape does not substantiate plaintiffs' assertion that S.M. identified R.B. as the

8

perpetrator of any sexual assault she may have experienced. Although we have set forth the facts concerning the alleged sexual assault and affirmed the court's finding that sexual abuse occurred, this is not a critical fact for purposes of our review.

Plaintiffs claim that they had identified five locations where the abuse could have occurred; these five places were their home, Hawthorne School,, the bus which took S.M. to school, the babysitter's home and the Co-Teach program at the University of Montana where S.M. spent her afternoons. S.M.'s mother and her psychologist eliminated all but Hawthorne School and then determined the abuse could have been committed only by R.B. in the gym.

There was no evidence presented that R.B. ever had any contact with S.M. However, there is evidence in the record to indicate that S.M.'s parents identified R.B. as a likely perpetrator of abuse because they had heard about an accusation of abuse made by a parent in the other pre-school classroom. We conclude that the evidence presented does not support plaintiffs' conclusions. The uncontradicted facts support the following argument of the School District:

> In response to the undisputed testimony that R.B. was never with S.M. even for a minute, much less long enough to assault her seriously, the Plaintiffs offer only their suspicions. . . . They do not explain why other locations . . . were eliminated . . . .

> Carrying this theory to the next stage, the Plaintiffs claim S.M. was assaulted by R.B. in the school during a gym class. . . . The only time S.M. and R.B. were even in the same room was for a . . . gym period, and the only gym class held within the time established by Dr. Rogers for S.M.'s injury occurred on Monday, April

9

27, 1987. . . .The only evidence offered by the Plaintiffs to support this theory is a statement by S.M.'s gym teacher.

. . .

The gym teacher had only a vague recollection of one of his 700 students going to the bathroom and stumbling in front of him, but even that child showed no sign of being in any distress. On the other hand, S.M.'s teacher testified specifically she was in that gym class supervising S.M. on April 27, 1987; nothing unusual happened that day: and R.B. had no contact whatsoever with S.M. . . . This direct testimony of S.M.'s classroom teacher is uncontradicted.

The record supports the contentions of the School District. S.M.'s teacher did specifically testify that R.B. had no contact whatsoever with S.M. and this direct testimony on the part of S.M.'s teacher is uncontradicted. In addition, we point out that there is no testimony from any of the adults in the gym class that S.M. showed any outward signs of injury, pain or trauma.

The School District contends that there is not a shred of evidence to support plaintiffs' theory of what occurred. We agree. We conclude that such conclusory and speculative statements as those presented by the plaintiffs in this case are not sufficient to satisfy their burden of demonstrating a genuine issue of material fact. Because we have concluded there is a complete absence of any evidence that R.B. assaulted S.M., it is unnecessary to address the issue of the School District's negligence in hiring or in supervising R.B.

We hold the District Court correctly granted summary judgment in favor of the School District.

10

## II.

Where default was entered by the clerk of court against defendant R.B. for failure to appear, does the subsequent entry of summary judgment in favor of the School District require the inclusion of R.B. in the judgment of dismissal?

Plaintiffs contend that because R.B. failed to appear, he has admitted the allegations of sexual assault. No issue as to R.B. is properly before this Court. No default judgment was entered against R.B. All that was done with respect to the default of R.B. was the entry of default by the clerk of court at the plaintiffs' request. We conclude there is no basis for our entry of a judgment or order which directly affects R.B. Our modification of the District Court's judgment reverses that judgment's effect as to R.B. Proceedings are pending before the District Court regarding R.B. and the clerk's entry of his default.

We conclude that it is not appropriate to include R.B. in the judgment of dismissal entered by the District Court. We affirm the judgment of the District Court as to defendant Missoula School District No. 1 and modify that judgment to state as follows:

> It is ordered, adjudged and decreed that the School District is 'granted judgment against the plaintiffs, and that the plaintiffs shall take nothing against the School District as a result of this action, and that the complaint of the plaintiffs shall be dismissed as to the School District. The School District shall be entitled to recover its costs of suit.

## III.

Did the District Court abuse its discretion by not holding a separate evidentiary hearing on the admissability of certain

11

hearsay evidence?

Plaintiffs contend that they requested that the District Court hold a hearing in accordance with Rule 804(b)(5), M.R.Evid., if it were inclined to find all of the other evidence supplied by S.M. insufficient to demonstrate a genuine issue of material fact. In State v. J.C.E. (1988), 235 Mont. 264, 273, 767 P.2d 309, 315, this Court ruled that when there is an issue concerning the admissability of at child's hearsay statement of sexual abuse, such a hearing is required. The plaintiffs contend that the court erred when it made the determination that the video tape, as a matter of law, demonstrated that S.M. was not competent to pinpoint her assailant or comprehend what was being asked of her, despite the specific request to hold the hearing.

We decline to rule on this issue as it is not properly before this Court. The plaintiffs did not file the transcript to demonstrate that they specifically asked the District Court for an evidentiary hearing. Further, when the entire transcript is not included in the record on appeal, Rule 9(b), M.R.App.P., requires the appellant to notify the respondent of the issues the appellant intends to raise on appeal so that the respondent can determine whether a transcript of parts of the proceeding which are not included in the record will be required. This was not done in this case.

AFFIRMED in part, REVERSED in part and REMANDED with instructions to enter judgment as modified herein.

_____
Justice

12

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13