No. 95-026

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

WENDI BRUNER,

      Plaintiff, Appellant,

-v-

YELLOWSTONE COUNTY, A BODY
POLITIC, YELLOWSTONE COUNTY ATTORNEY,
DENNIS PAXINOS, SR., MICHAEL S. MATTHEW,
H. ELWOOD ENGLISH, AND ITS FORMER
DEPUTY COUNTY ATTORNEY, DAVID W. HOEFER,

      Defendants, Respondents.

FILED

AUG 03 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        A. Clifford Edwards, Roger W. Frickle, Edwards Law
Firm, Billings, Montana

    For Respondent:

        Carey E. Matovich, Matovich, Addy & Keller,
Billings, Montana


               Submitted on Briefs:  April 27, 1995

                     Decided:  August 3, 1995

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from grant of summary judgment to the defendants by the Thirteenth Judicial District Court, Yellowstone County. We affirm.

The following issue is dispositive of the case:

Did the District Court err in granting summary judgment on the issues of negligent retention and sexual harassment?

Plaintiff, Wendi Bruner was employed as a secretary by the Yellowstone County Attorney's Office from August of 1991 until she tendered her resignation on April 8, 1992. In her resignation, plaintiff claimed that she had been continually sexually harassed by then Deputy County Attorney David Hoefer.

On April 9, 1992, County Attorney Dennis Paxinos hired a private investigator to investigate plaintiff's allegations and pending the investigator's findings, suspended Hoefer with pay. The investigator concluded that the charges were warranted and Paxinos then terminated Hoefer without pay on May 19, 1992.

In its Memorandum and Order, the District Court pointed out that Hoefer began grievance procedures against the County and on May 22, 1992, the Board of County Commissioners conducted a preliminary hearing and on that date negotiated a compromise settlement with Hoefer. On June 1, 1992, Hoefer executed a release and settlement agreement with the County which provided that Hoefer tendered his voluntary resignation effective May 19, 1992 and released any and all claims between Yellowstone County and himself in return for $30,000 in settlement. While the $30,000 settlement

2

was reported in the media, the settlement agreement contained a confidentiality clause and terms were not released to the public until after the County officials were compelled to release the documents.

On September 1, 1993, plaintiff filed a complaint with the Equal Employment Opportunity Commission, which rejected the claim as untimely, but issued a right to sue letter. On the same date the plaintiff filed a complaint of sexual harassment with the Montana Human Rights Commission (MHRC). In January, 1994, MHRC considered the length of delay in filing, but concluded that the statute of limitations was tolled on an equitable estoppel theory and that plaintiff's claim was timely made. MHRC dismissed the plaintiff's complaint without prejudice but did not issue a right to sue letter.

On April 1, 1994, plaintiff filed her First Amended Complaint in Yellowstone County District Court charging the defendants with negligent retention and sexual harassment and charging Hoefer with battery as well. Following two motions for summary judgment, the District Court held a hearing and thereafter issued its order on November 25, 1994, granting summary judgment to the defendants on all counts. Plaintiff appeals this order.

### Standard of Review

The standard of review for a grant of summary judgment is well settled in Montana. This Court will apply the same evaluation as the district court based upon Rule 56, M.R.Civ.P. The movant must demonstrate that no genuine issues of material fact exist. Toombs

3

v. Getter Trucking, Inc. (1993), 256 Mont. 282, 846 P.2d 265. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. S.M. v. R.B. (1993), 261 Mont. 522, 862 P.2d 1166. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. Lindey's, Inc. v. Professional Consultants, Inc. (1990), 244 Mont. 238, 797 P.2d 920. We review the legal determinations made by a district court as to whether the court erred. Matter of Estate of Alcorn (1994), 263 Mont. 353, 868 P.2d 629.

## ISSUE

Did the District Court err in granting summary judgment on the issues of negligent retention and sexual harassment?

The District Court concluded that the exclusive remedy for injury occasioned by this type of conduct is to be found in the Montana Human Rights Act under § 49-2-509(7), MCA. Reference was made to Harrison v. Chance (1990), 244 Mont. 215, 797 P.2d 200, which so holds. The court further concluded that plaintiff had failed to bring her claim in a timely fashion under the relevant statutes whether the 180 day statute or the 300 day statute be applied. Plaintiff had failed to bring a claim for more than 487 days. The District Court referred to the following allegation in the verified complaint of the plaintiff before the MHRC:

> I knew that I had legal rights available to me to sue the County, however, I was willing to forego those rights on condition that Mr. Hoefer be removed from his employment and would never be in a position to sexually harass a

4

secretary again.

Plaintiff contends the defendants are directly liable to her for negligence in retaining Hoefer, independent of Hoefer's sexually harassing conduct. Plaintiff argues that the defendants knew of Hoefer's conduct toward women but did nothing and that had the defendants acted responsibly, she would not have been injured by Hoefer.

Defendants contend that plaintiff cannot bring a tort action for negligent retention because it is still a tort action which was derived from Hoefer's sexual harassment and that plaintiff's sexual harassment claim is barred due to its untimeliness.

As the moving parties for summary judgment, the defendants had to show a complete absence of any genuine issues of fact deemed material in light of substantive principles that entitle that party to judgment as a matter of law. S.M., 862 P.2d at 1168. The defendants contend they satisfied that burden by showing that no material facts existed which would provide a cause of action against the County. Plaintiff also relies upon the letter sent by the County Attorney to Hoefer on May 19, 1992, following her resignation and the independent investigation. The letter contained the following paragraph with regard to Hoefer:

> Specifically you were warned by both Chief Deputy Daniel Schwarz and myself [Paxinos] that your expectation that [Wendi] accompany you to all your court matters had been overdone. We further warned you that you were alienating [Wendi] from the rest of the staff. . . You were specifically requested to attend a seminar dealing specifically with sexual harassment, which you did. Chief Deputy Schwarz and myself gave you specific instructions to neither take breaks nor have lunch with [Wendi] alone. You were specifically instructed that

5

there should always be at least one other support staff person or fellow attorney to protect both yourself and [Wendi] from any allegations of misconduct or inappropriate behavior.

While this letter suggests the possibility that the County Attorney had knowledge of Hoefer's conduct prior to the date of his dismissal, such facts are not material to the resolution of the summary judgment issue. Summary judgment is appropriate where a plaintiff fails to set forth facts which would establish each element of the alleged cause of action. Dvorak v. Matador (1986), 223 Mont. 98, 727 P.2d 1306. Plaintiff merely argues that the defendants knew before her resignation that Hoefer was causing problems. In itself that letter fails to establish the elements of the tort of negligent retention.

The letter does demonstrate that the defendants had taken steps to eradicate unprofessional behavior on Hoefer's part. Plaintiff failed to rebut the elements of the affidavit of the County Attorney which established that as soon as the County Attorney was notified by the plaintiff that a problem existed, Hoefer was suspended and investigated. The affidavit establishes without contradiction that Hoefer never worked a day after the plaintiff resigned. Plaintiff failed to set forth any facts demonstrating actual notification to the defendants about Hoefer's behavior until she actually resigned.

The key question is whether plaintiff could have recovered for negligent retention as a matter of law. The District Court relied on Harrison for the proposition that the exclusive remedy for any complaint arising from sexual harassment is § 49-2-509(7), MCA.

6

Plaintiff argued that her action against the County was not based upon sexual harassment. Our more recent holding of Hash v. U.S. West Communication Services (1994), 886 P.2d 442, at page 445-46 held:

> Hash asserts that timely filing of a discrimination claim with the HRC is not a prerequisite to filing with the district court. We previously have resolved this issue against Hash's position. In Harrison v. Chance (1990), 244 Mont. 215, 797 P.2d 200, we held that the Act provides the exclusive remedy for sexual discrimination claims. We did so on the basis that a 1987 legislative amendment made the Act the exclusive remedy for sexual discrimination. We held that the "statutory procedures for discrimination are exclusive remedies and cannot be bypassed." Harrison, 797 P.2d at 203. Like the plaintiff in Harrison, Hash chose to file a discrimination claim in district court without first timely filing her complaint with the HRC.
>
> . . .
>
> The Legislature clearly intended that the Act be the exclusive remedy for discrimination claims. We adopted this intent in Harrison and maintain it in the instant case. To permit parties to delay filing with the HRC until the HRC filing time ran out and then file their claims directly in district court would, in a sense, gut the Act. We reaffirm our decision that the HRC is the exclusive remedy for Hash's discrimination claim. (Emphasis supplied.)

In Harrison, this Court further considered claims for intentional infliction of emotional distress and outrage arising from the charges of sexually explicit conduct and also theories of wrongful discharge and breach of the implied covenant of good faith and fair dealing. In our present case, plaintiff has charged the defendants with negligent retention of Hoefer. At that point, the following statement in Harrison is pertinent:

> As in this case, any claim based upon sexual harassment can be framed in terms of numerous tort theories. The legislature expressed its intent that the Commission provide the exclusive remedy for illegal discrimination when it enacted subsection (7) of § 49-2-

7

509, MCA. To allow such recharacterization of what is at heart a sexual discrimination claim, would be to eviscerate the mandate of the Human Rights Commission.

Harrison, 797 P.2d at 200. Plaintiff contends that the tort she charged has nothing to do with Hoefer's sexual harassment. Clearly that is not a proper conclusion. If the sexual harassment were removed from the factual picture, plaintiff would have no tort claim. Because the sexual harassment is at the foundation of her claim of negligent retention, the only remedy she has is in the Montana Human Rights Act, §§ 49-2-101 et seq., MCA. We conclude that the holdings of Hash and Harrison are controlling and that the exclusive remedy for the claimed negligent retention of Hoefer and sexual harassment by Hoefer is to be found in the Montana Human Rights Act.

Section 49-2-501, MCA, required plaintiff to file her claim with the MHRC within 180 days, or if a grievance is filed first, 300 days. Plaintiff failed to file her claims within those periods of time. Plaintiff attempts to argue that she agreed not to file charges if the County would fire Hoefer and he could not harass other women. She became frustrated when she learned that the County had paid Hoefer $30,000, and then instituted these proceedings.

Plaintiff has failed to demonstrate any contract or agreement on the part of the defendants which was breached in connection with Hoefer. Plaintiff resigned on April 8, 1992, and raised to the County Attorney the issue of inappropriate behavior by deputy Hoefer. The County Attorney suspended Hoefer on April 9, 1992, and

8

Hoefer did not work for Yellowstone County after that time.

It is true that the MHRC eventually determined that the statutory filing time should be tolled on a theory of equitable estoppel. However, the District Court specifically considered this issue and concluded that equitable estoppel did not apply so that the complaint was untimely filed.

Equitable estoppel is not favored and will be sustained only upon clear and convincing evidence. Ducham v. Tuma (1994), 265 Mont. 436, 877 P.2d 1002. To constitute equitable estoppel, there must be conduct amounting to representation or concealment of material facts; these facts must be known to the party estopped at time of conduct; truth concerning these facts must be unknown to the other party claiming benefit of estoppel at the time it was acted upon; conduct must be done with intention, or at least with expectation that it will be acted upon by the other party; conduct must be relied upon by the other party and the other party must in fact act upon it in such a manner as to change his position for the worse. Kephart v. Portmann (1993), 259 Mont. 232, 855 P.2d 120.

Nothing in the record indicates that the County failed to carry through any representations to plaintiff. Hoefer did not work following the filing of plaintiff's resignation. Plaintiff resigned as of the end of April in 1992, yet it was not until the end of May 1992 that the Commissioners decided to pay Hoefer to resign voluntarily without filing an action against the County. Thus, there never was any representation to plaintiff that the County would not pay Hoefer money to disappear. Plaintiff never

9

Justice W. William Leaphart dissenting.


I dissent. For reasons outlined below, I would recognize the tort of negligent retention in Montana and reverse the grant of summary judgment.

The tort of negligent retention:

> arises when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his [or her] unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment. Yunker [v. Honeywell], 496 N.W.2d [419] 423 (quoting Garcia v. Duffy, 492 So.2d 435, 438-39 (Fla.Dist.Ct.App. 1986)).

ML v. Arndt (Minn. App. 1995), 531 N.W.2d 849, 857 (employee that had previously shot a co-worker and showed aggression towards coworkers was retained). In Vollmer v. Bramlette (1984), 594 F.Supp. 243, the Federal District Court for the District of Montana concluded that an employer has a duty to protect his or her employees from foreseeable employee-caused harms. That court concluded that in the negligent hiring context, "the question of foreseeability, such as which would give rise to a duty of the employer, is a question of fact not properly disposed of by summary judgment." *Vollmer*, 594 F.Supp. at 248.

> The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm to others.

Estate of Arrington v. Fields (Tex. Civ. App. 1979), 578 S.W.2d 173, 178.

11

The District Court in the case at hand, found that Bruner's claim for negligent retention was founded in unrelenting sexual harassment during her employment and that the exclusive remedy for this type of conduct (sexual harassment) is found in the Montana Human Rights Act. I disagree. Exclusivity only applies if the two remedies share indispensable elements. Sexual harassment under the HRA and negligent retention do not share indispensable elements. The HRA requires proof of discrimination. The tort of negligent retention does not.

In Retherford v. AT&T Communications of the Mountain States, Inc. (Utah 1992), 844 P.2d 949, the plaintiff alleged, among other claims, that AT&T negligently employed several employees who harassed her. The court analyzed whether Utah's Anti-Discriminatory Act (UADA) provided the exclusive remedy for her claims. The court adopted the indispensable element test as the analytical model to determine whether a statutory cause of action forecloses a common law remedy. Retherford, 844 P.2d at 963. Applying the test, the court first identified the injury that the statute was designed to address. Retherford, 844 P.2d at 965. Second, the court examined the elements of the plaintiff's tort claims to determine whether any element of the claim was a necessary element of the statutory cause of action. Retherford, 844 P.2d at 965. That court concluded that the UADA addressed employment discrimination against members of specified protected groups. The court found that:

> [n]oticeably absent from the list of the indispensable elements of the four claims [one of which was negligent

12

employment] is an injury that is a target of the UADA: retaliation for complaints of sexual harassment. While it is true that all four claims arise out of defendants' retaliatory conduct, preemption depends on the nature of the injury, not on the nature of the conduct allegedly responsible for that harm.

*Retherford*, 844 P.2d at 967.

I would apply the two-part test from *Retherford* to the instant case. First, the injuries addressed by the Montana Human Rights Act (HRA) include various employment-related discriminatory acts. Second, the elements of Bruner's tort, negligent retention, require that Bruner prove that Yellowstone County's "negligence in hiring, supervising, or retaining its employees [Hoefer] proximately caused her harm." *See Retherford*, 844 P.2d at 967. The HRA does not address negligent retention of an employee who harasses or discriminates against another employee. Rather, the HRA focuses on the discriminatory acts of the employer which directly impact upon the injured employee. The HRA provides in relevant part that:

(1) It is an unlawful discriminatory practice for:
(a) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of race, creed, religion, color, or national origin or because of age, physical or mental disability, marital status, or sex distinction[.]

Section 49-2-303(1)(a), MCA.

If Bruner were alleging that Yellowstone County was harassing or discriminating against her then she would have a claim under the HRA and any common law harassment and discrimination claims against Yellowstone County would be preempted. Likewise, a claim against the County based upon Hoefer's harassing conduct would merely be

13

derivative in nature and would be preempted. However, here, Bruner is suing Yellowstone County, not for Hoefer's conduct, but for the County's own negligence in retaining Hoefer in a position where, given his prior history of harassing other women, it was foreseeable that he would harass Bruner.

The claim for negligent retention focuses on Yellowstone County's failure to terminate Hoefer once it learned that Hoefer was harassing women employees--*i.e.* Bruner's predecessors. The factual basis of the negligent retention claim against Yellowstone County started before Bruner was even hired. Bruner presented deposition testimony from the county attorney indicating that he was concerned that Bruner's two predecessors would file constructive discharge claims against the County based upon Hoefer's conduct towards them. This testimony certainly raises a question of fact as to the County's prior knowledge (*i.e.* foreseeability) sufficient to defeat a motion for summary judgment on the claim of negligent retention.

The HRA addresses *discrimination* against an employee as opposed to *negligence* in hiring or retaining an employee. Burner's claim of negligent retention is not premised upon discrimination. Secondly, her claim is based upon the County's own actions, not those of Hoefer. Thus, her claim of negligent retention is not preempted by the HRA and is not controlled by the time constraints of § 49-2-501, MCA, which requires filing with the HRA within 180 days or with the EEOC within 300 days.

I would reverse the District Court's grant of summary judgment

14

on the question of negligent retention. I do not believe that the claim of negligent retention was preempted by the HRA nor do I believe that the claim of negligent retention is subject to the filing deadlines of the HRA.

_W. William Leaphart_
Justice

Justices William E. Hunt, Sr., and Terry N. Trieweiler join in the foregoing dissenting opinion.

_William E. Hunt Sr._
Justice

_Tm Trieweiler_
Justice

Justice James C. Nelson specially concurs.

I concur with the result reached in our opinion because I am satisfied that application of our decision in Harrison v. Chance (1990), 244 Mont. 215, 797 P.2d 200, mandates that result. I do not, however, read our opinion as a refusal to recognize the tort of negligent retention in a case involving different underlying facts. As far as I am concerned, that issue remains to be decided in the future.

_James C. Nelson_
Justice

15